**HYDE PARK HOUSING PARTNERSHIP and Stonewall Court Housing Partnership, Appellants,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. 75160.

Supreme Court of Missouri, En Banc.

March 23, 1993.

William B. Prugh, Randal L. Schultz, Dean Kuckelman, Kansas City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Don M. Downing, Deputy Atty. Gen., Carole Lewis Iles, Asst. Atty. Gen., Jefferson City, for respondent.

COVINGTON, Judge.

Hyde Park Housing Partnership (Hyde Park) and Stonewall Court Housing Partnership (Stonewall) seek review of a decision of the Administrative Hearing Commission (AHC) determining that Hyde Park and Stonewall were liable for unpaid sales tax and interest for the purchase of electrical current used in apartment buildings owned by Hyde Park and Stonewall. The decision is reversed. An additional decision of the AHC of which Hyde Park and Stonewall did not seek review is affirmed.

I.

Hyde Park and Stonewall are Missouri limited partnerships that operate apartment buildings in Kansas City. At issue in this case is Hyde Park and Stonewall's liability for sales tax on electricity purchased by them during the years 1987–90. The apartments owned by Hyde Park and Stonewall are used as private residences. Hyde Park is specifically devoted to "Section 8" housing, in which the tenant pays only a portion of the rent. The United States Department of Housing and Urban Development (HUD) pays a subsidy that covers the difference between the portion of the rent paid by the tenant and the actual rent.

The apartments in both complexes are individually metered for electricity. Kansas City Power and Light (KCPL) sells electricity to both Hyde Park and Stonewall under a residential tariff, one of several rates at which KCPL charges for electricity, and does not add sales tax to the bill. Tenants at Stonewall pay individually for their own electrical use. Hyde Park, however, pays for the electricity directly and passes on the cost to its tenants in the form of higher rents, paid by a HUD subsidy. In determining the amount of subsidy available, HUD calculated the mean monthly utility cost per unit at Hyde Park as $52.00. In the event of a utility rate increase, Hyde Park is required to seek HUD's permission to raise the rent. In the event of excessive utility use by a particular tenant, Hyde Park bills the tenant for the excess cost. If a tenant uses an unusually low amount of electricity, neither the tenant nor HUD receives any rebate or credit.

Both Stonewall and Hyde Park include separately metered common areas not classified under the residential tariff. KCPL charged, and Hyde Park and Stonewall paid, sales taxes on electricity used in the common areas. Neither partnership paid sales tax on a base charge per unit assessed by KCPL, irrespective of use, on vacant apartments. Electricity for the vacant apartments was also sold by KCPL under a residential tariff.

Following audits of Hyde Park and Stonewall, the Director of Revenue assessed sales tax and interest against Hyde Park and Stonewall on electricity purchased between January 1, 1987, and December 31, 1990. The assessment applied to electricity purchased by Hyde Park for its tenants and by Hyde Park and Stonewall for the base charge per unit assessment on their vacant apartments.

Hyde Park and Stonewall filed a joint complaint before the AHC seeking a redetermination of the Director's assessments of sales tax and interest. In addition, Hyde Park and Stonewall claimed refunds of the sales tax paid on electricity purchased for the common areas of the apartments. The partnerships claimed exemption under § 144.030.2(23), RSMo Supp. 1992. The AHC determined that Hyde Park was liable for sales taxes and accrued interest on its purchases of electricity for the apartment residences, and that both Hyde Park and Stonewall were liable for sales taxes on the base charge per unit assessed on their vacant apartments. These decisions form the basis for the petition for review.

The AHC also found that Hyde Park and Stonewall had paid tax on the utilities used

in the common areas and had not requested refunds from the Director. Because claims for refunds may not be filed with the AHC in the first instance, the AHC ruled it was without jurisdiction to consider the issue. *See St. Louis Southwestern Railway ' Co. v. State Tax Comm'n,* 713 S.W.2d 830, 832 (Mo. banc 1986). From this determination, Hyde Park and Stonewall do not seek review.

## II.

▮ Hyde Park and Stonewall raise four claims of error, the first of which is dispositive. The first point alleges that the commission erred in its legal conclusion that the residential rate classification under which Hyde Park purchased electricity does not entitle Hyde Park to an exemption under § 144.030.2(23). In response, the Director contends that § 144.030.2(23) does not exempt from sales tax all electricity purchased under a residential tariff; rather, the statute merely determines when sellers of electricity must add sales tax to the cost of the purchase. If the purchase is of electricity classified under a residential tariff, the Director contends that § 144.030.2(23) allows the seller to sell the electricity without adding sales tax, but if the purchaser uses any part of the purchase for a nondomestic use, then the purchaser must file a return and pay sales tax on that portion of the electricity used for a nondomestic use. The Director asserts that Hyde Park and Stonewall used the electricity they purchased under the residential tariff for a commercial, nondomestic use; therefore, they are not entitled to the exemption. The Director also contends that Hyde Park and Stonewall are not "individual purchasers," thus they do not fall within the class the legislature intended to benefit with the exemption.

▮ Appellants' first point requires interpretation of § 144.030.2(23).[1] The primary rule of statutory construction is to ascertain the intent of the lawmakers by construing words used in the statute in their plain and ordinary meaning. *Jones v. Director of Revenue,* 832 S.W.2d 516, 517 (Mo. banc 1992). Where the language is clear and unambiguous, there is no room for construction. *Id.* It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect. Conversely, it will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute. *State ex rel. Union Elec. Co. v. Public Service Comm'n,* 765 S.W.2d 626, 628 (Mo.App.1988). This Court interprets § 144.030.2(23) with the understanding that statutes creating exemptions from taxation are strictly construed against the taxpayer. *Kansas City Power and Light v. Director of Revenue,* 783 S.W.2d 910, 911 (Mo. banc 1990).

Section 144.030.2(23), enacted in 1979, allows an exemption from sales tax for electricity purchased for "domestic use." As acknowledged by the parties, the purpose of the exemption is to ease the burden of utility costs on residential users. The statute defines "domestic use" as "that portion of metered ... electricity ... which an individual purchaser uses for nonbusiness, noncommercial or nonindustrial purposes." *Id.* Before 1986, the statute continued:

Each seller shall establish and maintain a system in accordance with standards established by the director, whereby individual purchases are classified as domestic use or non-domestic use based on principal use. No seller shall charge sales tax on purchases classified as domestic use.

In 1986 the legislature amended § 144.-030.2(23), to delete the above-quoted por-

**1.** Interpretation of § 144.030.2(23) by various administrative agencies has led to diverse results. *See Report and Order of the Public Service Commission of the State of Missouri in "The Matter of the Rate Classification for Multi–Family Dwellings with Master Metered Service,* No. WO–92–142 (January 12, 1993) (the Public Service Commission interpreted § 144.030.2(23) to allow an exemption from sales tax for any pur-

chase made under a residential tariff regardless of the eventual use made of the purchase); *W.L. Gehrs, Jr., d/b/a Ambassador Apartments v. Director of Revenue,* No. 89–000721RS, [2 Mo.] St.Tax Rep. (CCH) Para. 201–367 (Mo.Admin. Hearing Comm'n, Dec. 20, 1989) (held that a business entity did not use purchases of electricity for domestic use regardless of its purchase under a residential tariff).

tion. In its place the legislature substituted:

> Each seller shall establish and maintain a system whereby individual purchases are determined as exempt or nonexempt based upon the seller's utility service rate classifications as contained in tariffs on file with and approved by the Missouri public service commission. Sales and purchases made pursuant to the rate classification "residential" shall be considered as sales made for domestic use and *such sales shall be exempt from sales tax.*

(emphasis added).

The plain and ordinary meaning of the 1986 amendment to § 144.030.2(23) is clear and unambiguous: purchased metered electricity sold under a residential tariff is considered as a sale made for domestic use and is exempt from sales tax. The plain and ordinary meaning of the words of the statute resolves the issue. Hyde Park and Stonewall purchased electricity under a residential tariff. Their purchases are, therefore, exempt from sales tax.

In oral argument before this Court the Director contended that the phrase "shall be exempt from sales tax" must be read together with the remainder of § 144.030.-2(23), which requires:

> Sellers shall charge sales tax upon the entire amount of purchases classified as nondomestic use. Each person making domestic use purchases of services ... and who uses any portion of the services so purchased for a nondomestic use shall ... file a return and pay sales tax on that portion of nondomestic purchases.

The Director contended that since Hyde Park purchased the electricity in fulfillment of its contractual obligation to its tenants to provide electricity, Hyde Park's purchases served a commercial, nondomestic use, rather than a domestic use. As a consequence, the Director contended, Hyde Park must file a return and pay sales tax on the electricity used for such nondomestic activity.

The Director's interpretation of § 144.-030.2(23) reads out of the statute the phrase "shall be exempt from sales tax."

Section 144.030.2(23) equates purchases of metered electricity by an individual purchaser for nonbusiness, noncommercial, or nonindustrial purposes as "domestic use" and exempt from sales tax. The 1986 amendment, however, created another exception for electricity purchased under a residential tariff: Sales of electricity purchased under a residential tariff are sales for "domestic use" and "shall be exempt from sales tax." After the 1986 amendment, determining the manner of use of the electricity becomes important only when the electricity is purchased for domestic use but is not purchased under a residential tariff.

In his brief the Director contends that the 1986 amendment changed only the standard used by sellers to determine whether they must collect sales tax from their customers. The Director contends that the responsibilities of purchasers to pay sales taxes on domestic use purchases later put to a nondomestic use did not change. The Director's interpretation ignores the wording of the 1986 amendment. If the legislature had intended that purchases made under the residential tariff be treated as any other domestic use purchase, then the legislature would have concluded the last sentence of the 1986 amendment with "sales made for domestic use." The 1986 amendment makes clear that electricity purchased under a residential tariff, without qualification, is purchased for domestic use *and* exempt from sales tax. To require the finder of fact to determine whether any part of a purchase under a residential tariff was used for a nondomestic use defeats the plain language of the statute and renders the phrase "shall be exempt from sales tax" idle verbiage.

The Director further contends that the exemption allowed in § 144.030.2(23) does not extend to Hyde Park and Stonewall because the statute defines domestic use purchases as only those purchases of electricity "which an individual purchaser uses for nonbusiness, noncommercial or nonindustrial purposes." The Director asserts that an "individual" purchaser is limited to a natural person, as opposed to a corporate

entity. The Director's characterization of an "individual" purchaser is irrelevant in the context of the issue presented; § 144.-030.2(23) further defines domestic use to include sales and purchases made under a residential tariff without regard to who made the purchase.

In summary, the clear and unambiguous language of § 144.030.2(23) exempts from sales tax purchases made under a residential tariff by Hyde Park and Stonewall.

### III.

The decision of the AHC that purchases by Hyde Park and Stonewall of electricity under a residential tariff are not exempt from sales tax under § 144.030.2(23) is reversed. The remainder of the decision of the AHC is affirmed.

ROBERTSON, C.J., and HOLSTEIN, THOMAS, PRICE and LIMBAUGH, JJ., concur.

SHANGLER, Special Judge, not participating.

BENTON, J., not sitting.